UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHNNY TRAWEEK )<br>)<br>Plaintiff, )<br>v. )<br>)<br>MARLIN GUSMAN, *et al.* )<br>)<br>Defendants. )<br>) | Civil Action No. 19-1384<br><br>Section: "F"(1) |

**REPLY TO OPPOSITION TO MOTION
FOR JUDGMENT ON THE PLEADINGS**

The plaintiff in this matter has pivoted 180 degrees in a mere ten days. At the December 4, 2019 oral argument on the Plaintiff's Motion to Compel before Judge Van Meerveld, counsel for the plaintiffs insisted that they be provided with documents pertaining to the overdention of Cacho and O'Campo, two illegal immigrants who were held beyond the 48 hour period allowed pursuant to an ICE detainer. At the hearing, when counsel for the defendant argued that these cases were irrelevant to this matter due to the involvement of ICE detainers, the plaintiff told the Court that the reason for the overdetention did not matter, but it was mere overdetention that would allow the plaintiff to use these matters to establish his *Monell* claim. The plaintiff's reliance upon Cacho and O'Campo, however, did notbegin there. O'Campo and Cacho have their own sections in the plaintiff's Amended Complaint as a basis to establish the Sheriff's alleged past overdention and notice thereof.[1] Further, Request for Admission Nos. 37 and 38 seek an admission from the Sheriff as to what Judge Vance said at a hearing for O'Campo and Cacho.[2] In addition to those requests for admission, which the plaintiff's counsel has propounded in both of his overdetention cases, Sheriff Gusman was subjected to extensive questioning about

---

[1] R. Doc. 16, ¶¶ 53-54.
[2] R. Doc. 42-10, pp. 9-10.

the O'Campo and Cacho matters just 3 days ago in the very deposition referenced in footnote 2 to the plaintiff's *Opposition*. The plaintiff's *Opposition* is the first time that the "narrow provision about ICE detainers" in the Consent Judgment, which was born solely out of the O'Campo and Cacho matters, has now been declared irrelevant and unrelated to Johnny Traweek's matter.

Despite the plaintiff's sudden change of heart on the relevance of these cases, the issue before the Court is not one of fact, but rather one of law. Judge Africk has given the Compliance Director control over all jail operations, including but not limited to all budgetary, employment, termination, staff deployment, and policymaking. Most importantly, as overwhelming evidence of the Consent Judgment's scope in relation to this matter, the federal monitors over the Consent Judgment are required to review and approve 501.13, the very policy in question. In light of the plaintiff's inclusion of extraneous materials in his *Opposition*, the Sheriff provides the following in an abundance of caution in the event that this Court considers such extraneous materials and thus converts the instant Rule 12(c) motion for judgment on the pleadings into a motion for summary judgment. *See U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265 (5th Cir. 2015).

On October 29, 2018, long before the instant matter was filed, policy 501.13 was transmitted to lead monitor Susan McCampbell and security monitor Margo Frasier as one of the "policies and standard operating procedures requiring your annual review." [3] On November 8, 2018, Mrs. McCampbell acknowledged that "[w]e have also reviewed . . . 501.13" in an email including Compliance Director Darnley Hodge, Assistant United States Attorney Kerry Dean, and counsel for the Plaintiffs in the Consent Judgment litigation, Emily Washington and

---

[3] Exhibit A, 10/29/18 email from Policy Director Debra Hammons to Monitoring Team (relevant text highlighted).

Elizabeth Cumming.[4]  On December 13, 2018, policy 501.13 and the newly proposed separated post order 7113 was sent to the Consent Judgment plaintiffs and Department of Justice for their review, noting that "the documents have been reviewed and approved by the monitors."[5] This process was further acknowledged in the Compliance Director's January 2019 Report to Judge Africk, in which it was stated "During the months of November and December 2018, Director Hammons and her team submitted the following standard operating procedures, policies, and post orders to the monitors for review and approval: . . . 501.13 – Department of Corrections." [6]

The Stipulated Order entered by Judge Africk defines the remedial relief, and the authority provided to the Compliance Director, by stating "[t]he Independent Jail Compliance Director ("Compliance Director") will have final authority to operate the Orleans Parish Jail ("OJC") and all jail facilities, including authority over the entire prisoner population in the custody of the Orleans Parish Sheriff's Office ("OPSO"), housed inside or outside of Orleans Parish . . ." *Jones, et al. v. Gusman, et al.*, EDLA No. 12-00859, R. Doc. 1082, p.2.  Whether the plaintiff in this matter, the Sheriff, or the undersigned necessarily agree with the federal monitoring of this particular policy, or the scope or thrust of the Stipulated Agreement, the federal monitors, Judge Africk, and a host of district judges throughout the Eastern and Middle District of Louisiana have clearly decided that the Compliance Director is a receiver and has final authority over all jail operations and all inmates in the jail.[7]

It further cannot be disputed that the Compliance Director took office on October 1,

---

[4] Exhibit B, 11/8/19 email from Susan McCampbell (relevant text highlighted).
[5] Exhibit D, 12/13/18 email from Susan McCampbell (relevant text highlighted).
[6] Exhibit C, OJC-60 Day Update Jan. 2019.
[7] *See Crawford v. Gusman*, No. 17-cv-13397, 2018 WL 3773407, at *3 (E.D. La. Aug. 9, 2018); *Crittindon v. Gusman*, MDLA Case No. 17-cv-512, Doc. No. 78; *Henry v. Gusman*, No. 18-cv-4661, 2018 WL 8053773, at *4–5 (E.D. La. Dec. 12, 2018); *see also Henry v. Gusman*, No. 18-cv-4661, 2019 WL 1670717, at *1 (E.D. La. Apr. 17, 2019) (adopting the Report and Recommendation as the Court's opinion); *Short v. Gusman*, No. 18-cv-3174, 2019 WL 1326645, *3 (E.D. La. Mar. 25, 2019).

2016. *See Jones, et al. v. Gusman, et al.*, EDLA No. 12-00859, Doc. No. 1097. The plaintiff's reference to a deposition pertaining to inmate Rodney Grant, whose overdetention allegations occurred between the dates of June 30, 2016 and July 12, 2016, *prior to* the Compliance Director taking office on October 1, 2016, is irrelevant for purposes of this motion. Likewise, the overdetention in the *Crittindon* matter in the Middle District of Louisiana is alleged to have occurred before the Compliance Director took office.

It is a matter of law that since October 1, 2016, the Compliance Director has had final authority over all jail operations and is the final policymaker at the Orleans Justice Center. The plaintiff's suggestion that there is some "additional basis" for an official capacity claim against the Sheriff, absent his being the final policymaker, is absolutely without merit. In the very case cited by plaintiff as allegedly standing for such a proposition, the Supreme Court clearly and unequivocally stated: "'Municipal liability under § 1983 attaches where – and only where- a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers." *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205 (1989); quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483-484, 106 S.Ct. 1292, 1300-1301 (1986). The Supreme Court noted that the official who is the subject of an official capacity claim must not only have discretion in the exercise of particular functions, but must "be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Pembaur*, 475 U.S. at 482-483, 106 S.Ct. at 1299-1300.

The basis of this motion is not new. Courts faced with similar receivership scenarios have dismissed municipalities from civil rights *Monell* claims as a matter of law. *See Canney v. City of Chelsea*, 925 F. Supp 58, 67-68 (D.Mass. 1996) ("Even if Chelsea municipal officials were shown to have been a part of the alleged retaliation against Canney, it appears that they would

have been powerless to act, since their authority to do so had been taken by the legislature and delegated to Spence through the Receivership Act. Thus, Canney is unable to state an actionable section 1983 claim against Chelsea as matter of law"); see also *Fantasia v. Office of Receiver of Com'n on Mental Health Services*, 2001 WL 34800013 at 6 (D.D.C. 2001)("It would unjust to hold the District or the Commission liable for activities undertaken by a court-appointed Receiver, where the Receiver, for the Court, exercised full authority over the Commission's operations, including personnel functions, without any oversight from the District. Indeed, the Commission and the District not only lacked the power to override the Receiver, but were also bound by court order to comply with his directives.")

Finally, this motion is timely. As Moore's Federal Practice explains, the primary distiniction between motions made under Rule 12(b)(6) and Rule 12(c) is one of timing. "If the motion is filed before the answer, the court may treat it as a motion to dismiss under Rule 12(b)(6). Conversely, a motion to dismiss filed after the pleadings close will be treated as a motion for judgment on the pleadings. In fact, any distinction between [a Rule 12(b)(6) motion and a Rule 12(c) motion] is purely semantic because the same standard applies to motions made under either subsection. 2 *Moore's Federal Practice* at § 12.38. "Rule 7(a) provides that the pleadings are closed upon the filing of a complaint and answer, unless a counterclaim, cross-claim, or third-party claim is interposed, in which event the filing of a reply, cross-claim answer, or third-party answer normally will mark the close of the pleadings."  5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367, at 5012–13 (1990).  Sheriff Gusman and Monique Filmore answered the Amended Complaint on June 28, 2019, nearly 6 months ago. On December 12, 2019, the Department of Corrections defendants filed an Answer to the

Amended Complaint with Jury Demand.[8]  No third party or cross claims exist.

Respectfully submitted,
**ORLEANS PARISH SHERIFF'S OFFICE**

___/s/      Blake J. Arcuri_____ _____
BLAKE J. ARCURI (LSBN 32322)
LAURA C. RODRIGUE (LSBN 30428)
FREEMAN R. MATTHEWS (LSBN 9050)
Orleans Parish Sheriff's Office
2800 Perdido St.
New Orleans, LA 70119
Telephone: 504.493.2107; Fax: 504.202.9454
arcurib@opso.us; rodriguela@opso.us

## **CERTIFICATE OF SERVICE**

I do hereby certify that on this 13th day of December, 2019, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent by operation of the court's electronic filing system.

____/s/  Blake J. Arcuri_____ _____

---

[8] R. Doc. 53.