UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHNNY TRAWEEK | CIVIL ACTION |
| VERSUS | NO. 19-1384-MLCF-JVM |
| MARLIN GUSMAN, ET AL. | SECTION: "F" (1) |

## STATEMENT OF UNDISPUTED FACTS

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Undisputed.

5. Undisputed.

6. Undisputed.

7. Undisputed.

8. **Disputed**. This fact claims that "time calculation disputes" were not part of Ms. Dibenedetto's "official job duties." But Ms. Dibenedetto has testified that as "administrative remedy you have to become an expert in all areas of the prison, including time calculation," and so she has performed "thousands" of time calculations.[1] She specifically testified that this included communications with defense attorneys about time calculation.[2] Indeed, she testified that when she identifies someone as eligible for immediate release she does not need to "get approval from anyone" to effect their release.[3]

9. **Disputed**. Mr. Moroz' statement was a correct reflection of the Court's minutes.[4]

10. Undisputed

11. Undisputed

12. Undisputed

---

[1] Ex. B (Dep. of Tracy Dibenedetto) at pg. 9.
[2] *Id*. at pg. 10.
[3] *Id.* at pg. 30.
[4] See R. Doc. 107-2 at ¶ 4.

1

13. Undisputed.

14. Undisputed

15. Undisputed

16. Undisputed

17. Undisputed

18. Undisputed

19. Undisputed

20. Undisputed

21. Undisputed

22. Undisputed

23. Undisputed

24. Undisputed

25. Undisputed

26. Undisputed

27. Undisputed

28. Undisputed

29. Undisputed

30. **Disputed.** Defendants contend in Fact 30 – without explanation – that Ms. Jones "was unable" to begin processing Mr. Traweek's file on a Friday, and so just left it alone for the weekend to begin on Monday. Plaintiff absolutely disputes that Ms. Jones was "unable" to do so, especially considering that (1) reviewing his file took less than forty minutes[5] and (2) the DOC has testified that it is supposed to prioritize casefiles like Mr. Traweek's with a short sentence and large amount of jail credit.[6]

31. Undisputed

32. Undisputed

---

[5] Ms. Jones completed her time calculation at 2:13 p.m. R. Doc. 107-2 at ¶ 43. She then walked it to her supervisor, who reviewed it and confirmed by 2:55 P.M. that Mr. Traweek was entitled to immediate release. *Id. at ¶¶* 44-45.

[6] Ex. A (30(b)(6) Deposition of Angela Griffin) at pp. 33 to 34.

2

33. Undisputed

34. Undisputed

35. Undisputed

36. **Disputed**. Defendants claim that inmates sentenced to parish time are the responsibility of the Sheriff. While that is usually true, there are scenarios like Mr. Traweek's where an inmate is sentenced to parish time, but the DOC becomes involved in calculating his sentence and winds up being the factual determinant of his release timing.[7] The DOC's own undisputed facts point out that a DOC employee "approved the final release" of Mr. Traweek.[8]

37. Undisputed

38. Undisputed

39. Undisputed

40. Undisputed

41. Undisputed

42. Undisputed

43. Undisputed

44. Undisputed

45. Undisputed

46. Undisputed

47. Undisputed

48. **Disputed**. This fact contends that "the release process was started immediately" for Mr. Traweek. That is incorrect. The release process did not begin for two weeks days after the DOC was put on notice of Mr. Traweek's overdention,[9] and four days after the DOC received Mr. Traweek's paperwork.[10]

49. Undisputed

50. Undisputed

---

[7] See, Ex. C (OPSO counsel contending that they had "no authority" to release Mr. Traweek without approval from the DOC), R. Doc. 107-2 at paragraphs 69 (DOC sent release paperwork to OPSO).
[8] R. Doc. 107-2 at paragraph 68 (DOC "approved [Mr. Traweek's] final release").
[9] R. Doc. 107-2 at paragraph 5 (May 8, 2018 email to DOC).
[10] R. Doc. 107-2 at paragraph 20 ("on May 17, 2018 the DPSC received Plaintiff's pre-class packet from OPSO").

51. **Disputed**. The DOC discovered that Mr. Traweek was eligible for immediate release two weeks prior to beginning his release clearing process.[11]

52. Undisputed

53. Undisputed

54. Undisputed

55. Undisputed

56. Undisputed

57. Undisputed

58. Undisputed

59. Undisputed

60. Undisputed.

61. **Disputed**. The Master Record Inquiry from CAJUN showed the DNA test was completed on May 10, 2018.[12]

62. Undisputed

63. Undisputed

64. Undisputed

65. Undisputed

66. Undisputed

67. Undisputed

68. Undisputed

69. Undisputed

70. Undisputed

71. Undisputed

72. Undisputed

---

[11] R. Doc. 107-2 at paragraph 5 (May 8, 2018 email to DOC).
[12] R. Doc. 107-8, p. 34.

73. Undisputed

74. **Disputed**. Defendants contend in Fact 74 that it is an "undisputed fact" that it is "reasonable for a pre-class packet received on a Thursday to not be completed until the following Tuesday."[13] Whether it is reasonable for Ms. Jones to take four days to complete a task that should have taken less than an hour is the core of Plaintiff's legal claim against her, and so necessitates denial of the Motion.

75. Undisputed

76. Undisputed

                                        Respectfully submitted,

                                        */s/   Casey Denson*
Casey Rose Denson (La. Bar. No. 33363)
3436 Magazine Street, Unit #7005
New Orleans, LA 70115
Telephone: (504) 224-0110
Email: cdenson@caseydensonlaw.com

/s/ *William Most*
Law Office of William Most, L.L.C.
William Most (La. Bar No. 36914)
williammost@gmail.com
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
T: (504) 509-5023

---

[13] R. Doc. 107-2 at ¶ 74

5