UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JOHNNY TRAWEEK** | : | **CIVIL ACTION** |
| | : | **NO. 19-1384    SECTION "F" 1** |
| **VERSUS** | | |
| | : | **JUDGE MARTIN FELDMAN** |
| **MARLIN GUSMAN, ET AL.** | | |
| | : | **MAGISTRATE JUDGE JANIS VAN MEERVELD** |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### DECLARATION

### ANGELA GRIFFIN

Who, based upon her personal knowledge, declares under penalty of perjury the following:

1. I am currently employed with the Louisiana Department of Public Safety and Corrections (hereinafter "DPSC") as the Program Director in the Adult Services Department of DPSC, and was employed in May of 2018 as the Administrative Program Director.

2. I was the Administrative Program Director overseeing the pre-classification process from January, 2013 until January, 2020.

3. In this position, I supervised two managers in the Pre-classification department, oversaw the pre-classification process, and performed other additional duties.

4. In my current position of Program Manager, I supervise the Program Manager 1 in the Pre-Classification Department, continue oversee the Pre-classification department as a whole, and perform additional duties.

5. I have access to the time computation records pertaining to all offenders sentenced to serve a DPSC sentence.

6. I have personally reviewed the time computation records pertaining to Johnny Traweek and attest that the following time computation records are true and correct copies of time computation records maintained by DPSC:

    a. Exhibit 5

7. Generally, DPSC is obligated to ensure that criminal sentences are carried out in accordance with the law of the State of Louisiana.

Exhibit 2

8. DPSC has no responsibility to an offender unless and until he is convicted of a felony and sentenced to hard labor.

9. Once an offender is sentenced the hard labor, DPSC is responsible for ensuring that the offender serves the sentence imposed upon him by the Court, and is timely released upon completion of said sentence.

10. Not every offender who is sentenced to DPSC custody is transferred to DPSC.

11. In my capacity as an Administrative Program Director in Adult Services, I am charged with overseeing the Pre-Classification of offenders who are serving DPSC sentences and are in the physical custody of local jails throughout the State of Louisiana and out of state.

12. "Pre-Classification" is the process by which DPSC identifies offenders who have been sentenced to DPSC custody and determines the logistics of their sentences.

13. Pre-Classification includes time computation, awards of good-time credits, qualifications for parole, and other matters affecting the length of an offender's time in DPSC custody.

14. The pre-classification process is performed when an offender receives a hard labor sentence.

15. That pre-class process includes but is not limited to: verification of the offender's identity, review and collection of conviction and sentencing information, time computation of release dates and parole eligibility dates in compliance with applicable sentencing laws.

16. The "release clearing process" is a separate process from the pre-class process.

17. Normally, the release clearing process begins 45 days prior to an offender's release.

18. When an offender is discovered to be eligible for "immediate release", the release clearance process begins immediately.

19. The release clearing process includes, but is not limited to: clearance of each offenders' records prior to their release, and the creation of offenders' release certificates for transmission to their holding facilities.

20. In addition, the release clearing process involves coordination with the local holding facility, the Department of Probation and Parole, confirmation of housing of sex offenders, and compliance with other applicable state laws.

21. Prior to a sentence to hard labor, DPSC has no duty or obligation to pre-trial detainees.

22. Pre-trial detainees are the responsibility of the parish Sheriff.

23. Offenders who have been sentenced to parish time (not hard labor) are the responsibility of the parish Sheriff.

24. DPSC has no duty to calculate the sentence of an offender who is housed in a parish jail and who was sentenced to parish time.

25. Mr. Johnny Traweek was a parish offender sentenced to parish time in a parish jail.

26. Offenders remain in the custody of the local sheriff of the Parish of conviction until DPSC receives the information listed in Article 892 and additional information required by DSPC.

27. DPSC had no way of knowing, and no duty to know, that Mr. Traweek had been convicted and sentenced until the parish Sheriff complied with Louisiana Code of Criminal Procedure Article 892.

28. Tracy Dibenedetto was the head of the ARP Department, and was not a part of the Pre-Classification Department.

29. Tracy Dibenedetto was not the appropriate point of contact to inquire about the allegedly delayed paperwork of an offender.

30. Louisiana law places the duty of preparing, gathering, and transmitting to DPSC all of the documents necessary to calculate an offender's sentence on the Sheriff's Office of the parish of conviction and Clerk of Sentencing Court.

31. There is no way for the DPSC to know that an offender was sentenced if the Pre-Classification Department does not receive a pre-class packet. If the Pre-Classification Department is notified of an offender sentenced who may be an immediate release, we attempt to get the paperwork from the Sheriff's Office of the Parish of conviction.

32. DPSC has no control over when, where, and how, the Sheriff's Office of Clerk of the Sentencing Court sends documents.

33. DPSC was unable to reach out to the Sheriff's Office to inquire as to missing documentation, because the Sheriff's Office failed to send *any* documentation.

34. Even if an email from an attorney informed DPSC that there was inmate being held past his release date, without the sentencing documents and the jail credit letter a certificate of release could not have been issued for Mr. Johnny Traweek.

35. Louisiana Code of Criminal Procedure Article 892 lists the documentation and information that must be transmitted by the Parish Sheriff to DPSC.

36. The information that DPSC receives from the local sheriff of the Parish of conviction is referred to as a "Pre-Class Packet," and must include:

- "Basic Information and Interview for Local Jail Facilities Form," – This document contains the offender's personal information
- "Credit for DPSC Commitment Form", - This document is a list of arrests and bonds for an offender's crime.
- "Bill of Information", - The document shows what crime the offender was charged with charged and date the crime was committed.
- "Uniform Commitment Order with Judges Signature", - This is a court document listing the crime the offender was convicted of, date of sentence, Parish sentenced, the hard labor sentence length given, and the sentencing Judge.
- "Suspect Rap Sheet with photo from the Automated Fingerprinting Identification System", and – This document is a printout with an individual State Identification Number from the AFIS machine after the offender is printed for the disposition of the sentence.
- "DPSC Acknowledgements and Signature Statement signed by the inmate." – This document is a form signed by the offender acknowledging the receipt of the DPSC Disciplinary rules, that the offender was instructed on the process for utilizing the Administrative Remedy Procedure, the receipt of the DPS&C Personal property list and the General Information Sheet.

37. When the pre-class packet is received, the paperwork is verified as a hard labor sentence, the DOC number is looked up or a new number is given if the offender does not have a DOC number. Information is entered in CAJUN showing that the pre-class packet has been received, then the paperwork is scanned in Oracle.

38. ORACLE is an electronic database utilized by DPSC that houses scanned versions of offender documentation.

39. In connection with the preparation of this declaration I reviewed the pre-class packet for Mr. Traweek that was scanned in ORACLE.

40. I determined that the Pre-Class Department received Johnny Traweek's pre-class packet on May 17, 2018 by noting the "Received" stamp on the intake interview sheet.

41. Based on my review of these records I concluded that the packet was assigned for a criminal history check on May 17, 2018 by ARDC Specialist Bianca Spradley.

42. A criminal history check is when an ARDC Specialist reviews an offender's Louisiana State Police Criminal History and Federal Bureau Criminal History listing other state agencies' criminal histories on the offender.

43. Once Ms. Spradley completed the criminal history check and printed out the applicable records, those documents were turned in to her supervisor.

44. Ms. Spradley's supervisor, who is also Ashley Jones's supervisor, then assigned the pre-class packet of Mr. Johnny Traweek to Ms. Jones on May 18, 2018.

45. May 17, 2018 was a Thursday.

46. It would be reasonable for a pre-class packet received on a Thursday to not be completed until the following Tuesday because the various parts of the pre-class process can require significant time to complete.

47. The Pre-Classification Department of the DPSC is not open on Saturdays and Sundays.

48. Pre-Class personnel are required to verify the identity of the offender to ensure that the same person convicted of the crime is the actual person in custody.

49. An offender's identity is confirmed using his fingerprint taken by local facility after conviction which gives him a State Identification Number (SID #) which is unique to each person fingerprinted.  This SID # is used to pull his criminal history's in NCIC.

50. Their identity must also be verified through NCIC.

51. Criminal and Justice Unified Network [CAJUN]  is an electronic system used statewide to track offenders, as well as conducting an offender's time calculation.

52. After the necessary information is located in or entered into CAJUN, DPSC personnel completes the offender's time computation, which requires reviewing: any and all jail credit that is applicable for each sentence (found on the Credit for DOC Commitment Form received from the jail); the crime convicted of (found on the Uniform Commitment Order), the date the crime was committed (found on the Bill of Information), the sentence date (the date the offender was given an imposed sentence to DPSC (found on the Uniform Commitment Order); the sentence start date (if deferred sentence, the date the Uniform Commitment Order gives to report to jail and the date the offender was remanded as listed on the Credit for DOC Commitment Form from the jail); the sentence length for each charge (the amount of time listed on the Uniform Commitment Order to serve in the custody of DPSC on a new commitment); offender class for the charge related to number of felony convictions(calculated by using the information on the CAJUN system and the Criminal History Reports; and Good time rate  and parole eligibility for each charge (determined by the commitment date and the type of crime).

53. After the input of all of the above information, CAJUN then calculates an offender's time.

54. The time calculation performed by CAJUN is verified for accuracy by the ARDC Specialist.

55. DPSC personnel also consider whether the offender has any time to serve on other sentences based on the information obtained from their criminal history and dispositions. That information can affect an offender's release, which is added into CAJUN.

56. Once the time computation has been completed and checked by the ARDC Specialist, it is given to the Specialist's supervisor, who checks the computation for accuracy and gives it back to the Specialist who then scans everything into ORACLE.

57. The Pre-Classification Department then sends a notice to the offender informing him of his release date.

58. Offenders may, upon receiving the notice, file an ARP challenging their time calculation.

59. Once Johnny Traweek's time computation was performed it was determined that he was due for release.

60. An offender is considered due for release once the Pre-Classification Department receives his paperwork, the time computation is worked, the release is cleared, and certificate issued.

61. It was the correct protocol for Ashley Jones to immediately bring Mr. Traweek's packet to the attention of her supervisor and to start processing the release immediately.

62. Normally, the release clearing process, which can be extremely detailed and time consuming, starts approximately 45 days before an inmate is scheduled to be released.

63. But in this case, because it was determined that Johnny Traweek was due for release, the release process was started immediately.

64. DPSC has a duty under state law to ensure that an offender that is being released from custody is actually supposed to be released from custody.

65. DPSC personnel must confirm that, pursuant to state law, an offender's DNA is taken. DNA is taken by the holding facility, and it is that facility's responsibility to transmit that information.

66. Furthermore, for an offender being held in a parish jail rather that a DPSC facility, the Sheriff must complete a "Release Clearing Sheet."

67. The release clearing checklist was specifically created and used to ensure that all state laws are complied with before an offender is released.

68. As part of the release clearing checklist DPSC personnel obtain the offender's criminal history reports (State Police criminal history, FBI criminal history and any out of state criminal history) to determine whether the offender has any warrants, charges without dispositions, and any Louisiana or out-of-state proceedings in which the offender may need to serve time. For every arrest or charge without a recorded disposition, DPSC personnel must contact the arresting agency, clerk of court, or prosecuting agency, to determine the disposition of each charge or if a detainer will be placed on the offender.

69. Based on my review of Johnny Traweek's records I have confirmed that Ashley Jones processed each part of the release clearing checklist, and did so within a reasonable amount of time.

70. An ARDC specialist such as Ashley Jones can print a release certificate, but the ARDC Supervisor and the ARDC Manager must sign off and approve the release certificate.

71. In this case it was proper and in accordance with policy for Ashley Jones to fax the release certificate to OPSO where Mr. Traweek was being held and to call and confirm that OPSO had received the release certificate.

72. Based on my review of Johnny Traweek's pre-class packet, including the time that the time computation was performed and when the certificate of release was issued, as a Manager overseeing the department I have no reason to believe that Ashley Jones, or any other DPSC personnel, delayed any part of this process.

73. Based on my personal review of the pre-classification records, my personal experience as the Program Manager, and based on my years of experience performing time computations and supervising them, Ashley Jones complied with state law and department policy. Ms. Jones did not delay any part of the time computation and release process and performed all of her duties reasonably.

I declare, under penalty of perjury, that forgoing is true and correct.

   ___*/s/ Angela Griffin*_        Date: 7/21/2020
     **Angela Griffin**