UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JOHNNY TRAWEEK | CIVIL ACTION |
| VERSUS | NO. 19-1384-MLCF-JVM |
| MARLIN GUSMAN, ET AL. | SECTION: "F" (1) |

**STATEMENT OF UNDISPUTED FACTS**

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Undisputed.

5. Undisputed.

6. Undisputed.

7. Undisputed.

8. Undisputed.

9. Undisputed.

10. Undisputed.

11. **Disputed.** Mr. Moroz's statement was a correct reflection of the Court's minutes.[1]

12. Undisputed.

13. Undisputed.

14. Undisputed.

15. Undisputed.

16. Undisputed.

17. Undisputed.

---

[1] *See* Rec. Doc. 153-1 at ¶ 7.

1

18. Undisputed.

19. Undisputed.

20. Undisputed.

21. Undisputed.

22. Undisputed.

23. **Disputed.** The very evidence Defendants cite to in support of Fact 23 shows that it is disputed: OPSO Policy No. 501.13 states that "[i]nmates sentenced to the Department of Corrections (DOC) shall be processed in preparation for transfer to DOC facilities by deputies assigned to the DOC Pre-Classification section <u>when the required paperwork and/or notification is received from the courts and/or DOC.</u>" (emphasis added). The Sheriff is therefore not "squarely" in control of processing and transfers as by their own policy is depending on receiving paperwork and notification from "the courts and/or DOC." The same policy also notes that Louisiana State Department of Public Safety and Corrections Basic Jail Guidelines, Section III-008 also apply to control the policy. Further, as OPSO counsel informed Mr. Traweek's criminal attorney: "We have no authority to release a DOC inmate. The judge formally sentenced him to their custody not ours."[2]

24. Undisputed.

25. Undisputed.

26. Undisputed.

27. Undisputed.

28. Undisputed.

29. Undisputed.

30. Undisputed.

31. Undisputed.

32. Undisputed.

33. Undisputed.

34. Undisputed.

35. Undisputed.

36. **Disputed.** Defendants contend in Fact 36 – without explanation – that Ms. Jones "was unable" to begin processing Mr. Traweek's file on a Friday, and so just left it alone for the

---

[2] Exhibit I, Emails between OPSO and Moroz.

weekend to begin on Monday. Plaintiff absolutely disputes that Ms. Jones was "unable" to do so, especially considering that (1) reviewing his file took less than forty minutes[3] and (2) the DPSC has testified that it is supposed to prioritize casefiles like Mr. Traweek's with a short sentence and large amount of jail credit.[4]

37. Undisputed.

38. Undisputed.

39. Undisputed.

40. Undisputed.

41. Undisputed.

42. **Disputed**. Defendants claim that inmates sentenced to parish time are the responsibility of the Sheriff. While that is usually true, there are scenarios like Mr. Traweek's where an inmate is sentenced to parish time, but the DPSC becomes involved in calculating his sentence and winds up being the factual determinant of his release timing.[5] The DPSC's own undisputed facts point out that a DPSC employee "approved the final release" of Mr. Traweek.[6]

    This Court already rejected LeBlanc's framing of this fact, finding that "there is certainly a chance that a reasonable factfinder could deem LeBlanc's acts and omissions - as the head of a department that had significant (if not dispositive) say in when Traweek was released from Orleans Parish Prison – to have been 'substantial factor[s]' in Traweek's overdetention."[7]

43. Undisputed.

44. Undisputed.

45. Undisputed.

46. Undisputed.

47. Undisputed.

48. Undisputed.

49. Undisputed.

---

[3] Ms. Jones completed her time calculation at 2:13 p.m. Rec. Doc. 153-1 at ¶ 49. She then walked it to her supervisor, who reviewed it and confirmed by 2:55 P.M. that Mr. Traweek was entitled to immediate released. *Id.* at 49 and 52.
[4] Rec. Doc. 114, Ex. A (30(b)(6) Deposition of Angela Griffin) at pp. 33 to 34.
[5] See Rec. Doc. 114, Ex. C (OPSO counsel contending that they had "no authority" to release Mr. Traweek without approval from the DPSC); Rec. Doc. 153-1 at ¶¶75-77 (DPSC sent release paperwork to OPSO).
[6] Rec. Doc. 153-1 at ¶ ("On May 17, 2018 the DPSC received Plaintiff's pre-class packet from OPSO.").
[7] Rec. Doc. 129 at 17.

3

50. Undisputed.

51. Undisputed.

52. Undisputed.

53. Undisputed.

54. **Disputed**. This fact contends that "the release process was started immediately" for Mr. Traweek. That is incorrect. The release process did not begin for two weeks days after the DPCS was put on notice of Mr. Traweek's overdetention,[8] and four days after the DPSC received Mr. Traweek's paperwork.[9]

55. Undisputed.

56. Undisputed.

57. **Disputed**. The DPSC discovered that Mr. Traweek was eligible for immediate release two weeks prior to beginning his release clearing process.[10]

58. Undisputed.

59. Undisputed.

60. Undisputed.

61. Undisputed.

62. Undisputed.

63. Undisputed.

64. Undisputed.

65. Undisputed.

66. Undisputed.

67. Disputed. The Master Record Inquiry from CAJUN showed the DNA test was completed on May 10, 2018.[11]

68. Undisputed.

---

[8] Rec. Doc. 153-1 at ¶¶ 8, 12, and 15 (May 8, 2018 email to DPSC and May 9, 2018 DPSC makes inquiry regarding the plaintiff.)
[9] Rec. Doc. 153-1 at ¶ 21 ("On May 17, 2018, the DPSC received Plaintiff's pre-class packet from OPSO.").
[10] Rec. Doc. 153-1 at ¶ 58 (May 8, 2018 email to DOC).
[11] Rec. Doc. 153-7 at 34.

4

69. Undisputed.

70. Undisputed.

71. Undisputed.

72. Undisputed.

73. Undisputed.

74. Undisputed.

75. Undisputed.

76. Undisputed

77. Undisputed.

78. Undisputed.

79. Undisputed.

80. **Disputed**. Defendant contends in Fact 80 that it is "undisputed" that it is "reasonable for a pre-class packet received on a Thursday to not be completed until the following Tuesday because the various parts of the pre-class process can require significant time to complete." The reasonableness is an issue of law, not an assertion of fact, and caselaw strongly disputes that Defendants actions were reasonable. *See, e.g., Crittindon v. LeBlanc,* 37 F.4th 177, 187-188 (5th Cir. 2022) (holding that the entitlement to release is "immediate or near-immediate" following conviction for persons whose sentence is complete); *Powell v. Barrett*, 376 F. Supp. 2d 1340, 1354 (N.D. Ga. 2005) (court was "unable to find any case . . . in which the detainment of a properly identified individual for days beyond his scheduled release date was held constitutionally permissible."). The determination of reasonableness is the core of Plaintiff's legal claim against, and so necessitates denial of the Motion.

81. Undisputed.

82. **Disputed.** In Fact 82, Defendants claim Mr. Moroz sent the Motion via email, attached as in Rec. Doc. 153-12, Exhibit 9-B, to the Sheriff's Office but "not any employee of DPSC". However, the email, Exhibit 9-B, shows Mr. Moroz sent the e-mail to RWeldon@corrections.state.la.us at the same time as "Arcuri, Blake." Mr. Acuri was counsel for the Sheriff, Rec. Doc. 52. Ms. Weldon even responded to Mr. Moroz's email on May 23, 2018, alerting Mr. Moroz that Plaintiff was "released yesterday," and including in her signature block that she was Rhonda Z. Weldon, Paralegal – Legal Section, Department of Public Safety and Corrections.[12] Further, Ms. Weldon has previously sworn under oath that she is a DPSC paralegal.[13]

---

[12] Exhibit J, May 23, 2018 Email from R. Weldon.
[13] *See, e.g., Austin Frederick v. LeBlanc, et al*, Case 3:18-cv-00682-SDD-RLB (MDLA), Rec. Doc. 74-1, and Rec. Doc. No. 58-3, p. 4.

83. Undisputed.

84. Undisputed.

85. Undisputed.

                                                                Respectfully submitted,

*/s/ Casey Denson*_____
Casey Rose Denson (La. Bar. No. 33363)
4601 Dryades Street
New Orleans, LA 70115
Telephone: (504) 224-0110
Email: cdenson@caseydensonlaw.com

/s/ *William Most*_____
Most & Associates
William Most (La. Bar No. 36914)
williammost@gmail.com
201 St. Charles Ave., Ste. 114, # 101
New Orleans, LA 70170
T: (504) 509-5023

6