# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
February 14, 2023
Lyle W. Cayce
Clerk

No. 21-30625

Percy Taylor,

*Plaintiff—Appellee,*

versus

James LeBlanc, Secretary,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:21-CV-72

Before Graves, Ho, and Duncan, *Circuit Judges*.
James C. Ho, *Circuit Judge*:

The Fourteenth Amendment guarantees that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. § 1. So it should go without saying that the government cannot hold a prisoner without the legal authority to do so, for that would "deprive" a person of his "liberty . . . without due process of law." *Id.* Consistent with these principles, "[o]ur precedent establishes that a jailer has a duty to ensure that inmates are timely released from prison." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). "Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially

valid court order or warrant constitutes a deprivation of due process." *Douthit v. Jones*, 619 F.3d 527, 532 (5th Cir. 1980). *See also Crittindon v. LeBlanc*, 37 F.4th 177, 188 (5th Cir. 2022) ("[I]t is without question that holding without legal notice a prisoner for a month beyond the expiration of his sentence constitutes a denial of due process.").

As our court has recently observed, however, the Louisiana Department of Public Safety and Corrections has identified and exposed a pattern of Louisiana inmates being detained past the expiration of their sentences. *See id.* (describing study that "exposed widespread overdetentions of DPSC prisoners").

Percy Taylor was detained beyond the expiration of his sentence. After his release, he sought redress for this violation of his rights by bringing a lawsuit against various Louisiana officials under 42 U.S.C. § 1983 and Louisiana state law. The district court dismissed most of Taylor's claims, but allowed a supervisory liability claim against Department Secretary James LeBlanc to proceed by denying qualified immunity. Now Secretary LeBlanc appeals the denial of qualified immunity arguing, *inter alia*, that his conduct wasn't objectively unreasonable in light of clearly established law.

The right to timely release is clearly established. But Taylor failed to adequately brief—and has thus forfeited—any meritorious argument that Secretary LeBlanc's behavior was objectively unreasonable in light of that right. Accordingly, we must reverse.

# I.

For purposes of this appeal, we accept the factual allegations in Plaintiff's complaint as true. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

No. 21-30625

Plaintiff Percy Taylor was sentenced in 1995 to 10 years imprisonment for a drug felony offense in Louisiana, but he was later released on parole for good behavior. While on parole, Taylor committed a new felony offense in July 2001 but wasn't arrested until February 20, 2002. Taylor was detained pending trial, convicted on October 15, 2003, and subsequently sentenced as a habitual offender. He was sentenced to life imprisonment and his parole for the 1995 offense was revoked. Eventually, his life sentence for the 2003 felony conviction was amended to 20 years of imprisonment with "'credit for all time served.'"

In 2017, Taylor learned that his full-term release date was March 16, 2021, and that his good time adjusted date was May 5, 2020. But he believed that his release date "should have been the last of October 2017 and no later than January 1, 2018" had his good time credit been correctly calculated. So he filed an Administrative Remedy Procedure grievance with the warden of the facility where he was held. He contended that he should have received credit toward the completion of his 10-year sentence for the 1995 drug conviction based on the time he spent in jail between February 2002 and October 2003 awaiting trial for his most recent felony offense. He contended that he'd been wrongfully denied double credit for his period of pretrial detention for his 1995 and 2003 sentences. The warden assigned the grievance to a non-attorney employee of the Louisiana Department of Public Safety and Corrections, who denied the grievance in July 2018. The denial explained that Taylor wasn't entitled to good time credit because the relevant law didn't go into effect until 2010, after both sentences were imposed.

The Administrative Remedy Procedure process allows for first and second step review. *See* LA. ADMIN. CODE tit. 22, pt. I, § 325(J)(1)(a)–(b). Taylor accordingly appealed to James LeBlanc, the Secretary of the Louisiana Department of Public Safety and Corrections. The appeal was denied. The denial explained that, under a 2011 law, the 18 months of pretrial

3

detention could apply only toward completion of the 20-year sentence ultimately imposed for the 2003 felony conviction, and not also toward the completion of the 10-year sentence imposed for the 1995 felony conviction. *See* La. Code Crim. Proc. art. 880(E). It noted that overlapping credits are prohibited when the sentences in question are consecutively, rather than concurrently, imposed. *See id.* at 880(B).

Taylor sought review from the state district court. A commissioner of the state district court issued a report recommending that the court grant the petition for review. According to the report, Taylor's parole had been revoked no later than his arrest in February 2002, so he "should have been shown as being in custody on both offenses" as of February 20, 2002, and should have received credit toward the completion of his 1995 sentence as well as his 2003 sentence for the time spent in custody between February 20, 2002 and October 15, 2003. The report noted that the version of the relevant state law in effect when Taylor's parole was revoked and he was convicted of the 2003 felony offence didn't expressly prohibit double counting of credit. The state district court adopted the recommendation and ordered Taylor's master prison record be recalculated to give credit for time served as to both sentences from February 20, 2002.

Taylor was released from prison on February 18, 2020—over two years after the latest date he alleges he should have been released.

In late 2020, Taylor brought various claims against officials in state court seeking damages for false imprisonment—including a § 1983 supervisory liability claim against LeBlanc. Defendants removed to federal district court and moved to dismiss. Plaintiff amended the complaint and responded to the motion to dismiss. The operative complaint alleged, *inter alia*, that Secretary LeBlanc—a final policymaker—failed to initiate policies ensuring inmates' timely releases, that he failed to train or supervise

employees carrying out the Administrative Remedy Procedure process, and that he was aware that inmates were held for longer than their sentences due to reports, public statements, and various cases documenting instances of inmates being detained beyond their sentences. The district court granted in part and denied in part the motion to dismiss.

Relevant here, the district court denied the motion as to the supervisory liability claim against Secretary LeBlanc, finding that he wasn't entitled to qualified immunity. The district court found that Taylor "sufficiently alleged that his unlawful detention and the patterns of unlawful detention in [the Louisiana Department of Public Safety and Corrections] stem from the same source—inadequate training and guidance," noting that the allegations included citations to various cases, reports, and statements suggesting Secretary LeBlanc "was aware of similar constitutional violations but failed to correct them." In its discussion of whether Secretary LeBlanc's conduct was objectively unreasonable, the district court only addressed whether Secretary LeBlanc acted with deliberate indifference to Taylor's constitutional rights. But deliberate indifference and objective unreasonableness are separate inquiries. *See*, *e.g.*, *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 328 (5th Cir. 1998) ("Obviously, the analysis for objective reasonableness is different from that for deliberate indifference (the subjective test for addressing the merits).").

Secretary LeBlanc appealed the denial of qualified immunity. [1]

"Under the collateral order doctrine, we have jurisdiction to review orders denying qualified immunity." *Carswell v. Camp*, 54 F.4th 307, 310

---

[1] Taylor argues that the district court shouldn't have dismissed the other claims, but he did not file a notice of appeal, so only the district court's denial of Secretary LeBlanc's assertion of qualified immunity is properly before us on this appeal.

(5th Cir. 2022). We review de novo a district court's denial of a motion to dismiss on qualified immunity grounds, accepting as true all well-pleaded facts and drawing all reasonable inferences in favor of the nonmoving party. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc).

## II.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). "A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter*, 659 F.3d at 445. "Both steps in the qualified immunity analysis are questions of law." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013). We are free to decide which prong of the qualified immunity analysis to address first. *See Pearson*, 555 U.S. at 242 ("[T]he judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each [qualified immunity] case.").

We proceed to consider whether Secretary LeBlanc's "actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter*, 659 F.3d at 445. "The second prong of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." *Hare*, 135 F.3d at 326 (emphasis omitted).

It is clearly established that inmates have the right to timely release from prison consistent with the terms of their sentences. *See Crittindon*, 37 F.4th at 188; *Porter*, 659 F.3d at 445. Taylor's claim against Secretary LeBlanc nevertheless fails because he has forfeited any argument that the Secretary's conduct was objectively unreasonable.

The objectively unreasonable standard is not "that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is . . . that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation omitted). The critical consideration is fair warning. *See id.* at 739–41. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001), *overruled in part on other grounds by Pearson*, 555 U.S. at 236.

Taylor does not present any meritorious argument that Secretary LeBlanc acted in an objectively unreasonable manner in this case.

To begin with, he argues that whether Secretary LeBlanc acted objectively unreasonably is a fact question not amenable to appellate review at this stage in the proceedings. But we have long held precisely the opposite. Whether "a given course of conduct would be objectively unreasonable in light of clearly established law" is a "purely legal question" and plainly within our jurisdiction on interlocutory review. *Kinney v. Weaver*, 367 F.3d 337, 347 (5th Cir. 2004). *See also Wyatt*, 718 F.3d at 503 (noting both steps of the qualified immunity analysis "are questions of law").

To the extent that Taylor argues the merits, it's inadequately briefed. Taylor's entire presentation on the issue of objective unreasonableness amounts to just this single conclusory statement: "It is inherently

unreasonable for the secretary . . . to fail to enact policies and procedures to ensure the prompt release of inmates who have served their sentences in accordance to law." A single, unsupported sentence isn't enough to adequately brief the issue. *See Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 382 n.6 (5th Cir. 2019) (noting that when an "issue [is] inadequately briefed, it is forfeited"). To be sure, we have said that forfeiture principles may apply "more leniently when the party who fails to brief an issue is the appellee" rather than the appellant. *Hernandez v. Garcia Pena*, 820 F.3d 782, 786 n.3 (5th Cir. 2016). But Taylor bears the burden on the issue of objective unreasonableness. *See, e.g., Angulo v. Brown*, 978 F.3d 942, 949 (5th Cir. 2020) ("The plaintiff has the burden to negate a properly raised defense of qualified immunity."). And he has not meaningfully briefed that issue. *See, e.g., Hornbeck Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 796 (5th Cir. 2013) (applying forfeiture to the appellee because an issue "has not been meaningfully briefed").

We reverse.